UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

   - against -

PETER SANTIAGO,

                    Defendant.

------------------------------------------X

06 Cr. 412 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

        Defendant Peter Santiago ("Santiago") pled guilty to one count of conspiracy, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute five grams and more of crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(B). For the reasons set forth below, Santiago will be sentenced to sixty months' imprisonment, to be followed by a five year term of supervised release. Santiago also will be required to pay a special assessment of $100.

**Prior Proceedings**

        Santiago was originally arrested on February 8, 2005. A case was brought against him in Bronx County criminal court, but was later dismissed. After Santiago declined to cooperate with a law enforcement investigation, he was arrested by federal agents on January 11, 2006, and has been held without bail since that time.

1

On May 11, 2006, a single-count information was filed in this District, charging Santiago with conspiracy distribute and possess with intent to distribute five grams and more of crack cocaine. Santiago appeared the same day before the Honorable Andrew J. Peck and allocuted to the conduct charged in the information, in connection with a plea agreement stipulating that the applicable Guidelines range for imprisonment is sixty to seventy-one months. Santiago's sentencing is scheduled for October 12, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

2

      (C)    to protect the public from further crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for --

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5)    any pertinent policy statement ... [issued by the Sentencing Commission];

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Santiago was born on October 16, 1978, in the Bronx, New York. His parents, who were not married, ended their relationship soon after Santiago was born, and his mother moved to Puerto Rico, leaving Santiago with his father. At age two, Santiago was sent to

3

Puerto Rico to live with his mother, although his father continued to provide emotional and financial support.

In Puerto Rico, Santiago lived with his mother, maternal grandmother, and two younger half-siblings. Santiago has stated that his mother and her boyfriends were physically abusive toward all three children. When he was fourteen, Santiago got into an altercation with one of his mother's boyfriends, and as a result, his mother sent him back to the United States to live with his father. According to Santiago, he was supposed to return to Puerto Rico after one year, but his mother refused to take him so he remained with his father in New York. Santiago has not seen his mother since, and has only spoken with her on the telephone four or five times in the last fifteen years.

Upon moving back to New York, Santiago lived with his father and paternal grandmother, with whom he is very close. However, Santiago experienced difficulty adjusting to life in New York, in part because he did not speak English.

Santiago has struggled with drug addiction for the last nine years, using marijuana on a daily basis and cocaine several times a week. He also reported that three years ago he began using ketamine, or "Special K," "whenever he could", and that he considers himself "hooked." In 2001, Santiago was ordered to undergo drug treatment as a result of arrests on drug charges. He

4

remained in the program for eighteen months, but began using drugs again soon after his release because he was "stressed."

Santiago dropped out of high school in the eleventh grade, reportedly in order to "sell drugs," but earned his GED in September 2001. In May 2005, Santiago earned an Air Condition and Refrigeration Technology certificate and an Environmental Protection Agency license from APEX Technical School in Manhattan. Between 1997 and 2005, Santiago worked at a number of jobs, including as a janitor, carpet installer, deli worker, and clerk.

Santiago has one daughter, age four, from a relationship that lasted between 1999 and 2005. Santiago and the child's mother briefly lived together in the Bronx, but upon their breakup Santiago and his daughter moved back in with his father. Until his arrest, Santiago typically cared for his daughter from Monday to Saturday, while the child's mother took care of her from Saturday to Monday morning. Since his arrest, Santiago's daughter has remained largely in the care of his father and grandmother, although personal circumstances make it difficult for them to raise a child.

Santiago's father has serious physical and mental health problems. He recently underwent triple bypass surgery, and has also been hospitalized and treated for schizophrenia after

threatening to kill himself. Santiago's elderly grandmother reportedly suffers from senility.

After his release from incarceration, Santiago plans to relocate with his father, grandmother, and daughter to upstate New York, where they have relatives.

**The Offense Conduct**

On February 8, 2005, Santiago sold drugs to a man and a woman on the street in the vicinity of Wallace and Burke Avenues in the Bronx. The transaction was observed by officers of the New York City Police Department ("NYPD"). After Santiago went inside a nearby apartment building, the officers arrested the man and the woman, who surrendered the small bags they had bought from Santiago. The bags turned out to contain crack cocaine. When Santiago reappeared on the street, he was arrested by NYPD officers. Santiago consented to a search of the apartment, where NYPD officers found what appeared to be two more bags of crack. On May 11, 2006, Santiago pled guilty to possessing with intent to distribute five grams or more of crack cocaine.

**The Relevant Statutory Provisions**

The mandatory minimum term of imprisonment is five years; the maximum term of imprisonment is forty years, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

A term of at least four years' supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

Santiago is not eligible for probation because the instant offense is a Class B felony, pursuant to 18 U.S.C. §3561(a)(1).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

7

The maximum fine is $2,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846. A special assessment in the amount of $100 is mandatory. 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court.

**The Guidelines**

The March 27, 2006 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to section 1B1.11(a).

The Guideline for violations of 21 U.S.C. § 846 is found in section 2D1.1. Based on his plea allocution, Santiago is responsible for the possession with intent to distribute of at least five but less than twenty grams of cocaine. As specified in the Drug Quantity Table under section 2D1.1(c)(1), the trafficking of this amount of cocaine results in a base offense level of 26.

Based on his plea allocution, Santiago has shown recognition of responsibility for the offense. Pursuant to section 3E1.1(a), the offense is reduced two levels. Further, because Santiago's timely notification of his intention to plead guilty has

allowed the Government to allocate its resources more efficiently, and because the offense level is 16 or greater, the offense level is reduced one additional level. § 3E1.1(b).

The defendant's resulting adjusted offense level is 23.

Santiago has five prior criminal convictions, three of which are narcotics charges. On December 3, 1998, Santiago was convicted of harassment in the second degree. He was sentenced to five days' imprisonment, and thus receives no criminal history points for this offense. USSG § 4A1.2(c).

On October 20, 2000, Santiago was convicted of marijuana possession, and sentenced to time served. This conviction results in one criminal history point. USSG §§ 4A1.1(c), 4A1.2(e)(2).

On December 28, 2000, and again on March 7, 2001, Santiago was arrested and charged with criminal sale of a controlled substance in the third degree. He pled guilty to both charges on March 26, 2001. On January 29, 2003, however, Santiago's guilty pleas and convictions were vacated, and he pled guilty to and was convicted of attempted criminal sale of a controlled substance in the third degree. He received a sentence of two concurrent five-year terms of probation. These convictions each result in one criminal history point. USSG §§ 4A1.1(c), 4A1.2(e)(2).

9

On August 5, 2005, Santiago was arrested and convicted of disorderly conduct, and sentenced to five days' community service. This conviction does not result in any criminal history points. USSG § 4A1.2(c)(1).

The convictions described above result in a subtotal of three criminal history points. Because Santiago was on probation at the time the instant offense was committed, two criminal history points are added. USSG § 4A1.1(d). The total of the criminal history points is five. Thus, Santiago has a Criminal History Category of III.

Based on a total offense level of 23 and a Criminal History Category of III, the Guidelines range for imprisonment is fifty-seven to seventy-one months. However, pursuant to Santiago's plea agreement, and because the statutory mandatory minimum sentence is five years, the Guidelines range for imprisonment becomes sixty to seventy-one months pursuant to § 5G1.1(c)(2).

The Guidelines range for a term of supervised release is at least four but not more than five years, the minimum required by statute, pursuant to section 5D1.2(c).

A term of probation is not authorized because the applicable Guidelines range is in Zone D of the Sentencing Table. USSG § 5B1.1 cmt. 2.

10

The Guidelines fine range for the instant offense is from $10,000 to $2,000,000. § 5E1.2(c). Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,952.66 to be used for imprisonment, a monthly cost of $287.50 for supervision, and a monthly cost of $1,736.98 for community confinement.

Pursuant to section 5F1.6, the Court may deny eligibility for certain Federal benefits of any individual convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having considered the Guidelines calculations, as set forth above, the Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a), in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of all of the factors enumerated in section 3553(a), it is hereby determined that a Guidelines sentence is warranted.

11

**The Sentence**

In determining an appropriate Guidelines sentence, the Court is mindful of Santiago's longtime drug addiction, and the fact that although he has several previous drug convictions, Santiago had never served more than five day's imprisonment before his arrest for the instant offense. These factors suggest that a sentence at the bottom of the Guidelines range, coupled with drug treatment, would be sufficient to reflect the seriousness of the offense, deter future criminal conduct, and provide Santiago with an opportunity for rehabilitation. For the instant offense, therefore, Santiago will be sentenced to sixty months' imprisonment, to be followed by a five-year term of supervised release. In light of his struggles with drug addiction, it is recommended that Santiago participate in the Bureau of Prisons' Residential Drug Abuse Program. To enable Santiago to remain in close contact with his family, including his young daughter, it is recommended that either Otisville or Fort Dix be designated as the place of service for his term of imprisonment.

Since Santiago has been detained without bail since his arrest on January 11, 2006, he is not a candidate for voluntary surrender. 18 U.S.C. § 3143(a)(2). Santiago is directed to report to the nearest Probation Office within seventy-two hours of release from custody. It is recommended that the defendant be supervised by the district of residence.

12

As mandatory conditions of his supervised release, Santiago shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1)  Santiago will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse provider, as approved by the Probation Officer. Santiago will be required to contribute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2)  Santiago also will submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the defendant is able to pay a fine, so the fine in this case shall be waived. A special

13

assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for October 12, 2006.

It is so ordered.

New York, NY
October  11 , 2006

ROBERT W. SWEET
U.S.D.J.

14